No. 45,768

STATE OF KANSAS, *Appellee*, v. LARRY GREEN, *Appellant*.

(472 P. 2d 212)

Opinion

filed July 17, 1970.

*James L. Postma*, of Lawrence, argued the cause, and *Oswald P. Backus*, of Lawrence, was with him on the brief for the appellant.

*Daniel A. Young*, county attorney, argued the cause, and *Kent Frizzell*, attorney general, and *John Mike Elwell*, assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Larry Green appeals from the judgment and sentence imposed as a result of his conviction by a jury of the offense of malicious destruction of property of a value of over fifty dollars (K. S. A. 21-1408).

At some time during the early morning hours of February 21, 1969, two holes were made in a large plate glass window on the west side of the Kansas Memorial Union building at the University of Kansas in Lawrence. The holes apparently were caused by bullets fired into the window. A light fixture behind the window and in line with one of the holes was damaged to the extent replacement was necessary. The window and the light fixture comprised the property appellant was charged with having destroyed. He was arrested and placed in custody on this charge March 8, 1969.

Appellant's first point upon appeal is the trial court erroneously admitted into evidence over his objection a confession allegedly made by him. At trial an agent of the Federal Bureau of Investigation testified he had been on campus investigating the bombing of the R. O. T. C. building which occurred the same night the window and light were damaged; he interviewed appellant as to

both of these events upon six separate occasions, March 4, 6, 9, twice on March 12, and on March 13, 1969; each time the agent talked to appellant the interview was with the permission of appellant's retained attorney, Mr. Backus; the agent informed appellant each time of his right against self-incrimination and of his right to counsel; this information was supplied by the agent reading aloud to appellant a printed form encompassing the *Miranda* warning, and then having appellant read it aloud.

Each time appellant responded he understood his rights as explained and upon each occasion except March 6 he signed a written statement appended to the form as follows:

### "WAIVER OF RIGHTS"

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

Appellant made no admission of guilt in any of the interviews prior to March 12. On that date the agent talked with appellant from about 2:45 p. m. until about 4:21 p. m. at which time appellant stated he desired to talk with his lawyer; the agent telephoned Mr. Backus who arrived at the county jail with a Mr. Milan, an elementary school physical education consultant who had befriended appellant. Mr. Backus and Mr. Milan talked to appellant in the absence of the agent until about 6:25 p. m. Mr. Backus then advised the agent he could talk to appellant again and that appellant had made no admission about any matters under investigation; Mr. Backus and Mr. Milan left; at first appellant stated he did not want to talk further; the agent started to leave, then appellant said, "No, sit down a minute"; appellant then admitted he had shot the window of the Union building on February 21 with a .22 caliber rifle; he said he had obtained some mescaline the night before and later had stopped at a house where he smoked some "Vietnamese grass"; he then procured the rifle from an old Chevrolet parked on Oread street and between 2:00 and 3:00 o'clock in the morning he walked toward the Union building; he saw the light in the building and the mescaline he had taken made him feel "real funny" looking at the light and he just had to shoot it out; he fired from an area in which construction was being done, leaning his arm against some bricks for steadying purposes, aiming the rifle at the light

through the window and shooting out the light; he stated he shot one time; the rifle belonged to a Mr. Pierce; on March 13 the agent interviewed appellant again and he again admitted firing a shot at the Union building window and furnished information as to narcotics.

At trial the court held a separate hearing outside the presence of the jury on the issue of the voluntary nature of appellant's confession. At this hearing the agent testified, developing the facts already indicated. He stated appellant was not threatened or coerced in any way, no promises were made to him and his statements were voluntarily made. At the separate hearing Mr. Milan testified as well as appellant. Appellant specifically admitted he waived his rights every time he talked with the agent. He acknowledged he knew he didn't have to talk to the agent. However, he denied he had ever admitted to the agent he had shot the window —instead he had told the agent he didn't shoot it out. He stated the agent talked to him mostly about the R. O. T. C. building and appellant felt the pressure about that and the fact he was in jail and might go back to the hospital for examination.

Mr. Milan testified he was present March 9 when the F. B. I. agent interrogated appellant; the agent emphasized the seriousness of the offense against the military science building and indicated his concern appellant had been connected with it; in an effort to help appellant, to get him to face reality, the witness had urged appellant to tell the truth; he did not want appellant to get the blame for something he didn't do; he thought appellant might have feared being charged with an offense against the military science building; he also thought appellant needed some psychiatric help in an effort to face reality.

Appellant seems to argue he was incapable of making a voluntary confession but this theory is not tenable under the record. Stress is placed on his questioning about the bombing of the R. O. T. C. building; however, appellant was never charged with that offense and, at the time he made the admission in question, he had been arrested and specifically charged with the offense against the Union building. Proper procedures were followed in every respect both as to the taking of appellant's confession and its handling at trial. The trial court was warranted in concluding as it did that appellant's admission was voluntarily made and no

error appears from the receipt in evidence of that admission (*State v. Kimmel,* 202 Kan. 303, 448 P. 2d 19).

Appellant urges error in the admission into evidence of a .22 caliber shell casing and two live .22 caliber cartridges, contending the foundation testimony insufficiently identified them and accounted for their custody. As a result of immediate investigation, the spent shell casing and the two live cartridges were found on the ground outside the damaged window in the vicinity of Baumgartner Drive. These exhibits bore definite marks on them. The two live cartridges gave the appearance of having been jammed in a rifle. The markings on the spent casing were shown by a ballistics expert to have been made by the firing of a rifle found in appellant's room, being a rifle loaned him by one Harold E. Pierce prior to February 18, 1969. Detailing the testimony would serve no useful purpose. We have examined it as to both identity of the challeged items and their custody between finding and time of trial and conclude the testimony provided ample foundation for receipt of the items in evidence.

Finally appellant challenges the sufficiency of the evidence to sustain a finding that the property destroyed was of a value of more than fifty dollars. His argument is this: The light fixture was shown to have been worth $38.71; a glass contractor testified that the salvage value of the window with only the top hole in it would be $4.74; the salvage value with the lower hole would be $5.25; appellant contends the only evidence before the trial court as to the number of shots he fired at the window was that contained in his admission—one shot; if he fired only one shot, someone else had to fire the other shot; there was no evidence appellant fired the first shot and it is reasonable to assume someone else fired the first shot; if appellant fired the second shot the property he destroyed would amount either to $43.96 or $43.45, being the value of the light fixture ($38.71) plus the salvage value of either $5.25 or $4.74.

We are informed this ingenious argument was presented to the jury. Implicit in its rejection by the jury is the finding, despite the limited nature of appellant's confession, that appellant in fact fired both shots into the window so as to inflict the damage charged. Value of the undamaged window was shown to be $60.00. The jury was instructed as to circumstantial evidence and the test in

determining guilt. We think the evidence was such as to justify the jury in drawing the inference it did, and upon appellate review that finding must be sustained.

The judgment is affirmed.

APPROVED BY THE COURT.